IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSEPH DAVID CARTER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. DKC-23-1846 |
| SCOTT MORAN, et al., | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Self-represented Plaintiff, Joseph David Carter, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1. Thereafter, Mr. Carter filed a court-directed Supplemental Complaint (ECF No. 6), naming as Defendants Scott Moran, M.D. and Dr. Robert Whizner-Carlson. ECF No. 6. Mr. Carter's Complaint, as supplemented, relates to his detention at Clifton T. Perkins Hospital Center ("CTPHC"). ECF Nos. 1, 6.

Defendants Dr. Moran and Dr. Whizner-Carlson filed a motion to dismiss, which is pending. ECF No. 13. Mr. Carter filed a response in opposition to the motion to dismiss. ECF No. 15.

Having reviewed the submitted materials, the court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, Defendants' motion to dismiss (ECF No. 13) will be denied and counsel shall be appointed to represent Mr. Carter.

## BACKGROUND

On May 12, 2023, the Circuit Court for Baltimore County found Mr. Carter not criminally responsible and committed him to the Maryland Department of Health for inpatient care and

treatment.[1]  At all times relevant to the Complaint, Mr. Carter was confined to CTPHC, a mental health facility operated by the Maryland Department of Health.

Mr. Carter alleges that he is mentally ill and a member of a "medically vulnerable subclass" which puts him at a high risk of contracting a serious disease.  ECF No. 1 at 2.  He states that he is a type one diabetic and despite his requests he does not receive proper meals which he claims violates his rights under the Americans with Disabilities Act.  Mr. Carter also claims that his toenail came off and he did not receive adequate care to treat the wound.  *Id*.

Mr. Carter seeks damages and "to challenge the fact or duration of confinement" and conditions of his confinement.  *Id*. at 3.  The initial Complaint named only Scott Moran, the Director of CTPHC, as a Defendant.  The court issued an order allowing Mr. Carter to supplement his Complaint to name additional Defendants.  ECF No. 4.  Mr. Carter filed a Supplemental Complaint naming Dr. Robert Whizner-Carlson as an additional Defendant.  ECF No. 6 at 1.

In his Supplemental Complaint, Mr. Carter asserts that Defendants were deliberately indifferent to his medical needs.  ECF No. 6 at 3.  He also claims that Defendants deprived him of his rights by denying him meaningful rehabilitative opportunities, the right to be free from arbitrary and capricious denial of rehabilitation opportunities, and denying him the right to minimal due process in decisions regarding unspecified "fundamental liberties."  *Id*.  In support of his claims, Mr. Carter states that he:

> is exposed as result of specified C.T.P.H.C's policies and practices that govern the over-all conditions of healthcare services and confinement to a substantial risk of serious future harm to which the defendants are 'deliberately indifferent'. The Plaintiff suffers from constitutional injury when he is exposed to a single C.T.P.H.C. policy or practice that creates a substantial risk of serious harm. Clifton T. Perkins Hospital is severely understaffed (general unavailablity of constitutionally adequate care) C.T.P.H.C. unconstitutional deprivation of adequate

---

[1]  *See* https://casesearch.courts.state.md.us/casesearch/inquiryByCaseNum.jis *State v. Carter*, Case No. C-03-CR-22-002726 (Cir. Ct. Balt. Co.) (last visited May 22, 2025).

psychiatric monitoring due to chronic understaffing and depriving medical and mentally ill patients access to basic mental healthcare places patients at high risk of serious harm.

*Id*. at 4.

More specifically, Mr. Carter states that from June 12, 2023, to the date of the filing of his Supplemental Complaint, Drs. Moran and Whizner-Carlson were deliberately indifferent to his serious medical needs. ECF No. 6 at 4. He asserts that Defendants denied, delayed, and intentionally interfered with his medical treatment by refusing him a necessary special diabetic diet. *Id*. Mr. Carter states that he has been injured by losing vision, suffering from diabetic neuropathy, and by the loss of toenails on both big toes. *Id*. at 5.

Additionally, Mr. Carter states that the "Warden" has deprived inmates of the minimal civilized measure of life's necessities. *Id.* He claims that he is incarcerated without being provided psychiatric rehabilitation that would provide him a realistic opportunity to cure his illness. *Id*. at 4.

Defendants do not provide any information disputing the facts as alleged by Mr. Carter and make purely legal arguments in support of their motion. ECF No. 13.

In response to the Motion to Dismiss, Mr. Carter adds additional information regarding his diabetic condition and treatment. ECF No. 15. He states that it was recommended that he receive an insulin pump and have his ketone levels checked when his blood sugar exceeded 250 but "the hospital" refused to check his ketone level and delayed his receipt of an insulin pump because staff are not educated on how to use it. *Id*. at 2; ECF No. 15-2 at 5 (May 16, 2024 letter documenting investigation by Disability Rights Maryland finding that Mr. Carter was denied a continuous glucose monitor and insulin pump recommended by his endocrinologist and detailing other issues with his diabetic care including lack of appropriate nutritional services and opportunities to

3

exercise); ECF No. 15-2 at 7 (progress notes dated Nov. 3 and 27, 2023, indicating Mr. Carter would benefit from an insulin pump).

Additionally, Mr. Carter explains that on July 3, 2024, he suffered a hypoglycemic episode and was found unresponsive on the floor next to his bed. ECF No. 15-1. The following day, he was taken to the emergency room, where he was admitted to the hospital and diagnosed with "Rhabdomyolysis and type 1 diabetes hyperglycemia." ECF No. 15-1 at 2. A physician advised Mr. Carter that he received too much insulin which caused the hyperglycemic episode. *Id*. Mr. Carter explains that he wears a glucose monitor which notifies him when his blood sugar is too high or low and posits that if the facility utilized the device correctly his blood sugar would not have dropped so low that he lost consciousness. *Id.*

Mr. Carter also states that he has been exposed to COVID-19 and seeks his release from confinement so that he can obtain appropriate medical care. ECF No. 15 at 4.[2]

## STANDARD OF REVIEW

In reviewing the Supplemental Complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*,

---

[2] Mr. Carter was previously advised that part of the relief he sought, release from incarceration, is not available through a § 1983 case and was advised that type of relief could be pursued through a petition for writ of habeas corpus. ECF No. 9.

534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) arguing that the Complaint, as supplemented, fails to state a claim that Defendants violated Mr. Carter's Fourteenth Amendment rights.

### A.     Failure to State a Claim

This court is mindful of its obligation to construe the pleadings of self-represented litigants liberally, such as the instant Complaint and Supplemental Complaint. *See Erickson v. Pardus*, 551

U.S. 89, 94 (2007).  In evaluating such a complaint, the factual allegations are assumed to be true. *Id.* at 93 (citing *Twombly*, 550 U.S. at 555-56).  Nonetheless, liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim.  *See Weller v. Dep't of Soc. Serv*s., 901 F.2d 387 (4th Cir. 1990).

A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action does not satisfy Rule 8's basic pleading requirements. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### B. Due Process

Because Mr. Carter is an involuntarily committed patient at a state psychiatric facility, his constitutional claims are properly construed as asserted under the Due Process Clause of the Fourteenth Amendment.  *Youngberg v. Romeo*, 457 U.S. 307,  315-16 (1982); *Patten v. Nichols*, 274 F.3d 829, 837 (4th Cir. 2001).  Under *Youngberg*, 457 U.S. at 319 (1982), "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id*. at 321–22; *see Patten*, 274 F.3d at 837–38 (applying the *Youngberg* standard to involuntarily committed psychiatric patients).  In determining whether an involuntarily committed person's substantive right protected by the due process clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." *Youngberg*, 457 U.S. at 320 (quoting *Poe v. Ullman*, 367 U.S. 497, 542 (1961)).  Under the *Youngberg* standard, a state must provide such an involuntarily committed patient with reasonable conditions of safety, including "adequate food, shelter, clothing, and medical care," as well as "freedom from unreasonable restraints." *Youngberg*, 457 U.S. at 315, 321.

In assessing whether conditions are constitutionally adequate, courts apply the "professional judgment" standard, under which "the Constitution only requires that the courts make certain that professional judgment in fact was exercised." *Youngberg*, 457 U.S. at 321. Decisions made by medical or other professionals are presumptively valid, and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323; *see Patten*, 274 F.3d at 845–46 (stating that the defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional").

Mr. Carter alleges that Defendants provided inadequate medical care by failing to provide an adequate treatment plan, including an adequate diet, to treat his type one diabetes. Mr. Carter alleges that, as a result of the inadequate treatment plan, he suffered physical injury including loss of vision, loss of toenails, and neuropathy. Construed liberally, Mr. Carter's allegations regarding the failure to manage adequately or treat his diabetes, states a claim that Defendants' conduct was a "substantial departure form accepted professional judgment." *Youngberg*, 457 U.S. at 323. Therefore, Mr. Carter's constitutional claims relating to the treatment of his diabetes sufficiently states a claim.

To the extent that Mr. Carter complains generally about his privileges or programming while detained at CTPHC, he has not alleged, much less demonstrated, that any decisions regarding his privileges or programming were "such a substantial departure from accepted judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 57 U.S. at 323. Mr. Carter's claims regarding privileges and programming therefore fail and are subject to dismissal.

Lastly, at various points in his filings, he references understaffing, unidentified policies, and violation of his right to equal protection. The court finds that these allegations are insufficient to establish plausible claims regarding the staffing levels at CTPHC or a claim of violation of the equal protection clause, *see* Fed. R. Civ. P. 8(a) and these claims are therefore subject to dismissal.

### C.    Appointment of Counsel

In light of the foregoing, the court will appoint counsel to represent Mr. Carter. While there is no absolute right to appointment of counsel, where an indigent claimant presents "exceptional circumstances" counsel may be appointed. *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel); *see also Jenkins v. Woodard,* 109 F.4th 242, 247 (4th Cir. 2024) ("…a district court must conduct a fact specific, two-part inquiry to assess whether a case presents exceptional circumstances before it decides whether to appoint counsel" including "whether the plaintiff has a colorable claim" and "considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff lacks the capacity to present it." (internal quotations omitted)). Mr. Carter has stated a colorable claim, and is an involuntarily committed litigant. In order for him to participate meaningfully in the further prosecution of his case, including the possibility of amending his pleadings and identifying the relevant professional standards under *Youngberg*, the court will appoint counsel to represent him. *See Farabee v. Gardella*, 131 F.4th 185, 197 (4th Cir. 2025) citing *Riddick v. Barber*, 109 F.4th 639, 652 (4th Cir. 2024).

**CONCLUSION**

By separate Order that follows, the Motion to Dismiss will be granted in part and denied in part as herein stated. Mr. Carter's claim regarding the denial of medical care for his diabetic condition shall proceed. Counsel shall be appointed to represent Mr. Carter.

<u>May 22, 2025</u>                                           /s/
                                                                        DEBORAH K. CHASANOW
                                                                        United States District Judge